May it please the Court, my name is Mark Ayers for the appellant, U.S. Bank. The issue in this case is whether under the established standard that intervention should be liberally allowed, U.S. Bank should have been allowed to intervene at the stage in the litigation where the district court was actually actively looking for parties which might have a claim to fire insurance policy proceeds that had been paid into court. Although U.S. Bank sought to intervene to make its claim within the time set forth under the district court's rather unusual procedure, which we'll talk about, for interested parties to make claims to the proceeds, and although U.S. Bank had been named by Mrs. Motto as a party that may have a claim to the proceeds, U.S. Bank's motion to intervene to make a claim was ruled to be untimely. As time and questions permit, I'd like to focus on this issue of timeliness and then move on to Mrs. Motto's erroneous position that the district court would not have had jurisdiction to actually rule on U.S. Bank's claim. Now, just one point about the standard of review. While this court's review of the denial of the motion to intervene is generally de novo, it is true that the timeliness question is subject to an abuse of discretion standard. But that standard serves as a very low hurdle in this case, this very unusual case, considering the circumstances. It is crucial to get the context of exactly what happened in this case that led up to that motion to intervene and this odd claims process. Essentially what the district court did is set up a two-stage process. The first phase was going to be State Farm and Mrs. Motto. In other words, is State Farm liable to pay any fire insurance proceeds and what amount? And that gets litigated and it gets resolved and it leads up to a settlement between State Farm and Mrs. Motto. The second part of that then commences. And I think it's crucial that we see what exactly the court says in its order. This is the first order. This is after settlement is reached. State Farm agrees to pay over $467,000 into court. And this is what the court says. This deposit will fully satisfy any and all of State Farm's obligation to Motto and to any other party claiming an interest in the settlement. Upon making the deposit, State Farm will be discharged from any further obligations and or liability, which will be important later. Motto, Mrs. Motto, agrees to provide notice to those parties claiming an interest in the proceeds of the insurance policy issued by State Farm to Motto so that those parties may file claims and be heard. And then later on it says there will be no funds distributed except until the ultimate disposition of this case. So then the case moves forward. There's a little bit of a back and forth between the court and Mrs. Motto. Mrs. Motto actually filed three different motions trying to get disbursement of the funds without following this procedure. And I just want to emphasize, this procedure is the procedure that was agreed upon by State Farm and Motto and put in place by the district court. You mean it was in the settlement agreement that this procedure would be set up? This is part of the settlement. Looking at the court's February 1 order, it says Motto agrees to provide notice to those parties claiming an interest. You said Motto and State Farm had agreed to the procedure. That appears to be what it is. You're just basing it on that sentence. I mean, State Farm's agreement is obviously to make the payment in court. I mean, they don't have any other obligation beyond that point. But this is, they certainly agree. This is unusual. Wouldn't this normally work that parties like the bank would just intervene at the beginning of the case, and then they would already be in the case, and then they would have a claim on the money that has to be resolved as part of the lawsuit? Well, that may be true in some instances, although one point about that, Your Honor, is they really wouldn't do much until that first phase. Are there going to be any proceeds at all is determined. All right. Well, then what do you mean when you say this is unusual? The unusual part comes in where, you know, later on and just a ---- Was this first part unusual? Or in your experience, is this normal? I would say that this claims procedure is unusual because nobody knows what this is. It's not the typical case. Okay. How would it work normally? Normally, you would either have an interpleader action go on where people would all be parties. They would have their legal rights adjudicated, and they would have a right of appeal. Here we have the disposition between State Farm and Ms. Motto, and now there's a ---- it's like a claims procedure. The court was very clear it did not want it to be called interpleader, which was a little odd. But it's a claims procedure. Who would typically initiate the interpleader action? Well, the interpleader action typically is a situation where State Farm would have agreed to, I'm just going to pay this money in and so forth. This worked out a little differently. State Farm didn't want to do that for some reason? I don't know what State Farm's motivation were, Your Honor. When did your client or its predecessor find out about this? As far as when they find out about what specifically, Your Honor? Well, about the settlement. I don't know exactly when they had noticed that. RFC, following this claims procedure, did file first a claim, what they called a claim, and then later filed a second, what turned out to be their second motion to intervene. But that was under very different circumstances from what U.S. Banks motioned to intervene when it was eventually filed. Because what happened was, while Ms. Motto went back and forth with the district court, finally, under much pressing, in fact, the district court even threatened to dismiss the action, she provided a list to the district court of here are the parties that may have an interest, that may have a claim on these proceeds. And the district court's order was that she give them notice. He finally had to say, you give notice within 15 days of this order. She did that. In June, this happened June 6th is when she filed this with the court. Notice was given on U.S. Bank on June 5th. July 3rd, within the 30 days, right within the procedure set forth by the district court, U.S. Bank shows up, files its motion to intervene. Where is the 30 days specified? That is specified in the final order in this on May 24th. It's in the appendix in 95 and in the record in document 130. Thirty days, that's the procedure. And that's precisely what occurred here. The motion to intervene and the complaint and intervention stating U.S. Bank's claim to the proceeds were filed then. And I think it's easy to sum up this way. Let's assume for a second the U.S. Bank had not called it motion to intervene and complaint and intervention, but had just called it a claim. There would be no question about timeliness. It may be that the district court didn't agree ultimately with the U.S. Bank's legal positions, but timeliness would not have been an issue because it would have been, we were on the list provided by Mrs. Mato, we filed a claim within 30 days, it's timely. Instead, the district court ruled, it didn't give much of a basis for the ruling other than to say, well, U.S. Bank's motion is untimely because it would somehow prejudice State Farm and Mrs. Mato. That's hard to understand given that this is the procedure set forth and agreed to by Mrs. Mato. State Farm is gone. They're out of it by this point. They've already paid their money in. The court has discharged them. Mrs. Mato has agreed to this procedure and has agreed to the 30 days. We filed that within 30 days. So if a claim would not have been untimely, it is impossible to understand how a motion to intervene would not be untimely. And here is, I think, the crucial difference. Because you could say, well, then why not just file a claim? There, you've got your procedure. Because we don't know what this procedure is. Are we a party? We're going to be asserting legal rights, legal claims under recognized Arkansas law, contrary to what Mrs. Mato said, to these proceeds. Those are going to be somehow adjudicated, but do we have a right of appeal? Is it going to be res judicata as to us in a different proceeding? We're just a claimant. This procedure is not subject to any rule, statute, case. So the only way for a party to protect all of their rights and make a claim would be to file a motion to intervene. What about the judge's statement that any claims against Mato may be pursued by filing suit against her separately? Well, that runs directly into this court's Curtis decision, where this court made very clear that does not protect. Mrs. Mato's position is the same as the district court. You're not harmed by not being in the case because you can go sue separately. Now, we've done that just to cover all the bases. But the Curtis decision involving Sears is directly on point, where this court said that is not sufficient for the exact same reason here. Here we're concerned that if that money is dispersed, it is long gone, especially given Mrs. Mato's reluctance to want to name parties in this. We have a serious concern that that money will be long gone long before any action is concluded. In the separate action that you filed, did you seek some kind of order to protect the funds? I believe that once that action was filed, an order was sought again in this case and I believe in the other case in the declaratory judgment action. I'm not exactly positive on that. I see that my time is up. Thank you. Should we remand the district court to address the denial of your motion to intervene as untimely? To address the timeliness issue? I would say, Your Honor, that remanding back to allow the court— I guess what I would say is I don't see how, because there's no difference in substance between filing a claim and filing a motion to intervene, except a claim doesn't protect you in your appeal rights or anything else. I think what I would do, what we would seek, is a remand to say, you've set up this procedure, they've followed your procedure, you should let them in the case now to adjudicate their rights with their— in a manner that they're protected. In case you adjudicate their legal rights against them, they should be able to appeal. What about the rest of the Rule 24 analysis? Should that be remanded or should this court— because in addition to timeliness, you have to meet other criteria to intervene. Yes, Your Honor. I mean, the district court only addressed timeliness, although I would say— So should we remand for the rest is my question, or are you asking us to do the intervention analysis in the first instance? I think there's certainly enough that's in the record. The rest is pretty much as a matter of law. The facts here are undisputed. I would make one point, though, in response to that, is the court did address this consolidated underwriters case, although in its order it said it was a 1973 case, sexually, 1955 district court case, saying that, well, and this was talking specifically about RFC, but it may be applicable here, that it would not have jurisdiction to consider U.S. or any claim related to the mortgage because it could only— it couldn't hear any equitable liens, for example. The case does not say that. That is not what that case means upon further analysis at all. It can hear any legally recognized claim, whether it's an equitable lien that is clearly recognized in Arkansas, as in the Surrett case, which we cited in our reply brief and elsewhere. U.S. Bank clearly has legal positions, both legal and equitable, but that doesn't really matter. We clearly have recognized arguments under clearly established Arkansas law to those fire insurance proceeds, and there's nothing precluding, certainly nothing in that case, that precludes the court from addressing those. Thank you. Thank you. Mr. Sutter. Yes, ma'am. May it please the court, opposing counsel. Ten minutes of talking and there was not one discussion of how these lawyers got involved in this case. They were sued initially because GMAC was put on the check, and we believe that GMAC was the stakeholder. They were sued. These lawyers filed an answer. They appeared. Then GMAC went bankrupt. We then learned that the mortgage had been released at the courthouse. We then learned that there was the existence of forced place insurance. So I filed a motion to dismiss GMAC without prejudice, no objection from these lawyers, none, not one. Then we start a shell game. Various entities start filing motions to intervene before trial. The judge denies those motions before trial. No timely appeal was filed. I filed a motion to dismiss. This appeal was untimely, and this court denied it. But at some point, people like the appellants here, entities like the appellants here, should be held to a timeliness issue. Well, what about the fact that the judge sets up this procedure and says file a claim within 30 days? He said file a claim, not a motion to intervene, and there is a difference. A claim, what they filed is a motion. What's a claim? A claim is a legal claim, much like a bankruptcy claim, proof of claim in a bankruptcy estate. Well, this isn't a bankruptcy case, though. No, but it's . . . I'm trying to understand what kind of claim is involved here. A claim is a right to payment. It's a legal right to payment. And what they filed was a motion to intervene, seeking to reform that release that they filed of record before trial that my client and I relied upon and settled this case. Now, understand now, no matter how many lawyers tell you this, my client is not liable on that note because she did not sign the note. A mortgage is nothing more than a security interest. The claim is against my client. We never agreed that they could file anything seeking anything equitable. It was a legal claim at law, Judge. And a claim is a right to payment, nothing more, nothing less. Every first-year law student understands that. Well, why shouldn't the judge let them intervene to make that claim? They didn't file a claim. They filed a motion to intervene, and the judge didn't lawyer for them. He took their motion on its face. These are good lawyers. They knew what they were doing, and they have no legal claim. And if you go to the . . . Well, he didn't deny it on that basis. No, he didn't, because it was untimely, because how many times does a mortgage holder get to file a motion to intervene? In this particular case, Judge, these lawyers were in this case before trial, and I moved to non-suit them. All they had to do is say, I object. We have a claim. They did not do that. And at some point, it's not as simple as saying, well, the judge gave them 30 days. Yes, we did agree to do that, because at this point I thought there was nobody with a legal claim because they had filed a release of record in Sling County, and they have now filed a separate action against me, my clients, and everybody else seeking to reform that release. So in answer to the earlier question, your view is that U.S. Bank knew about this process all along. When we ask opposing counsel, when did they know about the settlement? Well, opposing counsel was representing GMAC from the very first day, not this gentleman, but his trial counsel. And GMAC was the person on the check. When I found out that there was a release filed of record and that I found out that there was forced-placed insurance, you can't get a double recovery, Judge. And they didn't object to the non-suit motion. How much notice does a person need? And just because U.S. Bank is the actual note holder is of no moment, because we were told that GMAC was the person entitled to receive the funds. It turns out that's not true. But at the end of the day, Your Honors, shouldn't people like Ms. Motto, who don't even sign the note, she's not liable on this note. They can't point to a single obligation Ms. Motto has to them. A mortgage is just simply a security interest that released her dower interest. There is not a single Arkansas case on point holding a person liable at law when you have not signed the note. And, you know, at the end of the day, equity aids the diligent. It doesn't aid anybody else. And I cannot comprehend of a situation where a national bank represented by the same lawyers sued, then a motion to dismiss is filed. I didn't have a right to that under Rule 41. All they had to do was file an objection, Your Honor. And then they filed another motion to intervene. They could have taken that appeal here. They didn't do that. No. They wait until I settle not only the personal property claim, which was in excess of half a million dollars, but also the real property claim, which was about $400,000. They wait until I go out and obtain a settlement on behalf of my client, and then they file a motion to intervene when the judge said to file a claim. Now, why was it that I was having all this trouble? And I did get crossways with Judge Miller. Because you know what? This is a shell game. I gave notice to everybody I knew. And at the end of the day, it turned out to be these people, U.S. Bank, that actually held the note. But their predecessors had been they had filed motions. They had not objected to the motion to dismiss. And they had notice of this, and equity, no matter what they do, equity aids only the diligent. And so at the end of the day, Your Honors, they have no legal claim as a matter of law because they released it. Did the dismissal of GMAC violate the automatic bankruptcy stay? No, ma'am, because the stay only applies to actions against the estate. And here, GMAC, and I've cited you some along, that was an agent for U.S. Bank at all times. At all times? At all times. GMAC, this record reflects, never owned that note. They were a servicer. They were a collection agent. That's it. But bear in mind that knowledge of the agent is imputed to the principal, especially when these same lawyers are involved, Your Honors. Now, how in the world can any person come into this court and argue that their motion to intervene was timely when their predecessor was a party defendant. They didn't object. All they had to do was object and say, hey, don't dismiss us. And they would have been at trial. If that were wrong, then their predecessors filed a motion to intervene before trial. They didn't appeal it then. At some point, this court has to set up. You know, you've got to hold banks to the same standards as everybody else has held. And they had every opportunity to appeal the district court's denial of their intervention motions. Granted, it was their agents, their predecessors, in interest. But they had every right. They filed these motions saying, hey, we're the ones with the right to payment. But the district court said, bam, you're untimely. Why not appeal it then? At the end of the day, the district court was correct because a claim is not an equitable claim. It's a legal claim. A claim is a right to payment, period, end of sentence. U.S. Bank has no right to payment for Ms. Motto because she did not sign the note, A. And B, because a legal claim is not an equitable claim, and they filed a release. They filed a release. We tried this case. We settled it in the middle of trial. And they waited until after this. And what Judge Miller was concerned about was, is Ms. Motto liable to anybody? And on these facts, she's not liable at law to anybody. And, in fact, in equity, she probably isn't either. But that's pending before the U.S. District Court in eastern Arkansas right now. They've sued to reform the mortgage. And, Your Honor, I just think, at the end of the day, a— Let me ask you this, Mr. Souter. If a party had filed a claim in response to that order, would they have been a party to the case then? No. They would just be a claimant of some kind? I think what Judge Miller was trying to— And under the rules of civil procedure, what would be their status? Well, I think they would be a movant. They would be a claimant. I think what Judge Miller was trying to do, because, remember, he had— They had released this claim. They had filed a mortgage release. And Ms. Motto had not signed the note. They being the RFC head? No, GMAC head. GMAC head? Yes. GMAC had filed a release, and Ms. Motto had not signed that note. So, there cannot be any legal claim against her. And, quite frankly, it's vexatious to argue otherwise. You can't sue somebody— Well, I wasn't asking just about the bank. I was asking about the procedure in the case. Right. When he said anybody can file a claim within 30 days. I'm just wondering what would the status be of any party who filed such a claim or any person? You're saying they would be a claimant? A movant. Or a movant. I mean, they—but, quite frankly, they can't. That would be their status. But it wasn't Judge Miller's intent to hold mini-litigation here. It was, hey, do you have a right to payment? And they do not have a at-law right to payment. I know. That's the merits, though. I'm trying to understand the procedure and what status anybody should have or seek. Sure. And I certainly understand that. But if you go to the merits under Rule 24, which Judge Miller didn't do, I mean, timelessness is an issue here. They had every opportunity to come in before court. And if they didn't like Mr. Miller's—Judge Miller's decision, then they could have upheld it up here. They didn't do it. I understand your argument. Thank you. Thank you both.  The last case in the morning. The next case this morning is United States v. Richard Matthews.